IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IVANA D., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   No. 21 C 605 |
| | ) |
| KILOLO KIJAKAZI, Acting | )   Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Plaintiff Ivana D. seeks to overturn the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After careful review of the record and the parties' respective arguments, the Court affirms the Commissioner's decision.

## BACKGROUND

Plaintiff protectively applied for DIB and SSI on February 26, 2019, alleging in both applications that she became disabled on May 1, 2018, due to degenerative disc disease, nerve compression, osteoarthritis, spinal stenosis, scoliosis, depression, anxiety, memory loss, and extreme leg weakness. (R. 284, 318).[2] Born in 1984, Plaintiff was 33 years old

---

[1]     Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d).

[2]     Plaintiff initially alleged an onset date of either January 1, 2015 (DIB) or January 1, 2016 (SSI) (R. 277, 286), but amended both applications to reflect the May 1, 2018 date. (R. 284).

as of the alleged disability onset date, making her at all times a younger person (under age 50). (R. 277); 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c). She lives in a house with her parents, brother, and young son. (R. 50-51). Plaintiff's educational history includes three years of college, graduation from beauty school, and completion of a certified nursing assistance license. (R. 46, 50-51, 319). Plaintiff spent seven years as a receptionist for a hair salon, then was self-employed as a hair stylist from 2012 through December 2014. (R. 47, 49, 319). There is no evidence that she has engaged in any substantial gainful activity since that date. (R. 445).

The Social Security Administration denied Plaintiff's applications initially on June 13, 2019, and again upon reconsideration on December 24, 2019. (R. 115-69). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Deborah M. Giesen (the "ALJ") on June 10, 2020.[3] (R. 37). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Sara Gibson (the "VE"). (R. 39-87). On August 7, 2020, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine, morbid obesity, osteoarthritis of the right foot and tarsometatarsal junction, osteoarthritis of the bilateral knees, and depression are severe impairments, but that they do not alone or in combination with her non-severe impairments meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15-20).

After reviewing the evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work involving: occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; no

---

3    The hearing was held telephonically due to the COVID-19 pandemic.

climbing of ladders, ropes, or scaffolds; and no working around unprotected heights, open flames, or unprotected or dangerous machinery. Plaintiff is also limited to simple, routine tasks not requiring a fast production rate pace. (R. 20-26). The ALJ accepted the VE's testimony that a person with Plaintiff's background and RFC could not perform Plaintiff's past relevant work as a receptionist or hair stylist, but can perform a significant number of other jobs available in the national economy, including inspector, assembler, and packer. (R. 26, 27). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the May 1, 2018, alleged disability onset date through the date of the decision. (R. 27-28). The Appeals Council denied Plaintiff's request for review on December 28, 2020. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in finding that her headaches and varicose veins are not severe impairments; (2) failed to consider relevant opinion evidence in determining that she does not have impairments that meet or equal a listing; and (3) made a flawed RFC assessment that fails to account for the combined effects of all of her impairments. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## **DISCUSSION**

**A.      Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable

3

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[4] 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will uphold the ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and build[s] an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

---

[4] Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

4

**B.    Analysis**

    **1.    Severe Impairments**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred at Step 2 of the sequential analysis by finding that her headaches and varicose veins are not severe impairments.[5] As Plaintiff acknowledges, however, "[t]he Step 2 determination is 'a *de minimis* screening for groundless claims' intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)); (Doc. 13, at 10-11). "As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process," making any error of omission at Step 2 harmless. *Esther V. v. Saul*, No. 19 C 8093, 2021 WL 1121123, at *4 (N.D. Ill. Mar. 24, 2021) (quoting *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010)). *See also Dorothy B. v. Berryhill*, No. 18 C 50017, 2019 WL 2325998, at *2 (N.D. Ill. May 31, 2019) ("[A]ny error at step two is harmless if the ALJ finds a claimant has *any* severe impairment and goes on to sufficiently address the aggregate effect of all the claimant's severe and non-severe impairments later in his analysis.") (emphasis in original) (citations omitted). Here, the ALJ found that Plaintiff suffers from several severe impairments and so proceeded through the next sequential steps. (R. 17-28). In such circumstances, any error the ALJ may have made at Step 2 was at most harmless and does not support remanding the case.

---

[5]    Though Plaintiff also invokes her obesity at Step 2 (Doc. 13, at 12), there is no dispute that the ALJ found that condition to be a severe impairment. (R. 15).

**2. Listings**

Plaintiff next argues for reversal or remand based on the ALJ's failure to find that she suffers from impairments that meet or equal several listings. "The Listings involve cases where the impairment(s) is so severe that there is no need to evaluate the limits of what a claimant can actually do; thus, if a claimant satisfies the requirements of a Listing, she is presumptively disabled and no further consideration is required." *Acera B. v. Saul*, No. 20 C 1674, 2021 WL 2222605, at *3 (N.D. Ill. June 2, 2021). Plaintiff "has the burden of showing that h[er] impairments meet a listing, and [s]he must show that h[er] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citing *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999)).

The ALJ addressed whether Plaintiff meets or equals four listings: 1.02 (Major dysfunction of a joint), 1.04 (Disorders of the spine), 12.04 (Depressive, bipolar and related disorders), and 12.06 (Anxiety and obsessive-compulsive disorders). Beginning with Listing 1.02, the ALJ noted that it requires gross anatomical deformity resulting in an inability to ambulate effectively, but medical records routinely showed that Plaintiff can walk, sometimes with a normal gait and sometimes with an antalgic gait or with use of a walker or cane. (R. 17; R. 601, 603, 632, 643, 646, 672, 676, 686, 793, 808, 815, 902, 904, 915, 933, 949, 954, 966, 1499, 1838, 1856, 1909, 1941, 1978, 2034, 2063). Plaintiff herself stated in an April 11, 2019 Function Report that she can walk for 30 minutes before needing to stop and rest, though in November 2019 she amended this to two blocks. (R. 21, 334, 366). *See Deloney v. Saul*, 840 F. App'x 1, 4 (7th Cir. 2020) (no error with

6

respect to Listing 1.02 where the ALJ cited evidence that the plaintiff could ambulate effectively).

For Listing 1.04, the ALJ acknowledged that it requires evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, but found no radiological evidence of these criteria in the record. (R. 17-18). Notably, state agency consultants Young-Ja Kim, M.D., and Reynaldo Gotanco, M.D., both considered Listing 1.04 but did not find that Plaintiff met or equaled it. (R. 127, 145). Plaintiff does not point to any contrary opinion in the record. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) ("The ALJ expressly relied upon the medical judgment of the state-agency consultants [in determining medical equivalence], and their uncontradicted opinions constitute substantial evidence."). The ALJ engaged in a similarly thorough analysis of Listings 12.04 and 12.06, finding that Plaintiff suffers from at most moderate to mild limitations in each area of functioning in "Paragraph B," and does not satisfy the criteria set forth in "Paragraph C." (R. 18-20). In addition, the ALJ was once again persuaded by uncontradicted opinions from the state agency consultants, Laura Eckert, Ph.D., and Michelle Hoy-Watkins, Psy.D., who both determined that Plaintiff does not meet or equal the diagnostic criteria of either listing. (R. 126, 143-44). *See Buckhanon ex rel. J.H.*, 368 F. App'x at 679; *Wilberton v. Colvin*, No. 12 C 4216, 2015 WL 7251935, at *5 (N.D. Ill. Nov. 17, 2015) ("[T]he ALJ correctly noted that all of the medical opinions in the record had concluded that M.M.W. was not disabled at step 3, which provides substantial evidence for his conclusion.").

Plaintiff does not dispute that the ALJ properly considered each element of the listings and provided an adequate discussion of the relevant requirements. Any such

7

argument has been waived. *See, e.g., Victoria R. v. Kijakazi*, No. 20 C 4444, 2022 WL 3543231, at *10 (N.D. Ill. Aug. 18, 2022) (ALJ properly concluded that the plaintiff did not meet Listing 1.04 where she "does not cite evidence that would be sufficient to satisfy the requirements . . . of the listing."); *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.") (internal quotations omitted). Plaintiff instead insists that she satisfies all four of the cited listings because her severe impairments "have existed well in excess of 12 months as required by 20 CFR 404.1509." (Doc. 13, at 13). This argument has no merit because Plaintiff cannot demonstrate presumptive disability at Step 3 solely based on this durational requirement.

As noted, Plaintiff must show "not only that her impairments meet a listing, but that her impairments satisfy all of the various criteria specified in the listing." *Jeannie M. v. Kijakazi*, No. 19 C 2603, 2022 WL 488942, at *4 (N.D. Ill. Feb. 17, 2022) (citing *Maggard*, 167 F.3d at 380). Plaintiff makes no attempt to satisfy this burden, offering no discussion of the relevant criteria at issue for each listing or any explanation as to how she meets or equals them. *See Kathy H. v. Berryhill*, No. 14 C 2131, 2019 WL 3716814, at *5 (N.D. Ill. Aug. 7, 2019) (quoting *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010)) ("It is not [the reviewing] court's responsibility to research and construct the parties' argument."). Nor does Plaintiff challenge the ALJ's reliance on the state agency consultants' opinions (except to observe that they were not her treating physicians). (Doc. 13, at 13). *Stephanie A. v. Kijakazi*, No. 21-CV-775-SPM, 2022 WL 1153464, at *8 (S.D. Ill. Apr. 19, 2022) (quoting SSR 96-6p, 1996 WL 374180, at *2) ("State agency medical

8

and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Act.").

Plaintiff's primary argument is that under the "treating physician rule," the ALJ should have given greater weight to the opinions from her treating neurologist, Michael Kelly, M.D., and her treating primary care physician, Katherine Maietta, M.D. (Doc. 13, at 13; Doc. 20, at 3-4). As a preliminary matter, since Plaintiff filed her claim in February 2019, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also* Social Security Administration, Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819 (Jan. 18, 2017). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022). *See also* 20 C.F.R. § 404.1520c(c)(1)-(5)).

Moreover, the only records Plaintiff cites from Drs. Kelly and Maietta are treatment notes and not opinions, much less opinions suggesting that Plaintiff meets or equals a listed impairment. (*See* Doc. 13, at 3-5, 8).[6] This Court follows the approach of those

---

[6] Rather than direct the Court to specific medical records, Plaintiff cites to entire exhibits covering hundreds of pages. (*See* Doc. 13, at 2-8). It is not the Court's responsibility to comb through the record to find documents that support Plaintiff's case. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *McDonald v. Astrue*, 858 F. Supp. 2d 927, 937 (N.D. Ill. 2012) (expressing "dismay" that the plaintiff "cites generally to exhibits spanning over one-hundred-twenty pages in the record.").

9

courts that have distinguished between treatment notes containing only symptoms and diagnoses, which generally are not medical opinions, and treatment notes providing a "prognosis, a discussion of what [the claimant] could do despite her impairments, or an assessment of her physical restrictions," which are medical opinions. *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018). Here, Plaintiff fails to identify specific treatment notes that discuss her prognoses, her physical or mental restrictions, or her functional abilities or limitations. *Compare Congious v. Colvin*, No. 2:15-CV-131-PRC, 2016 WL 5219747, at *5-6 (N.D. Ind. Sept. 22, 2016) (remand required where the ALJ failed to consider "Listing equivalence forms," "Physical Capacity Evaluations," and "Physical Effects of Pain" forms completed by the plaintiff's treating rheumatologist and nurse practitioner, which provided specific opinions regarding the plaintiff's functioning and concluded that she met Listing 14.02 for systemic lupus erythematosus). It is not sufficient for Plaintiff to baldly claim that the ALJ rejected unspecified "medical opinions" she says support listing-level impairments. "Instead, [she] must engage with the ALJ's analysis and show why it was either illogical or unsupported." *Dzafic v. Kijakazi*, No. 22-2090, 2023 WL 2536340, at *3 (7th Cir. 2023). Plaintiff's failure to do so here dooms her theory for reversal at Step 3.

Viewing the record as a whole, the ALJ did not err in relying on the uncontradicted state agency consultants' opinions that Plaintiff does not meet or equal any listing. The Seventh Circuit has made clear that "[t]he court's role is not to reweigh evidence, but to determine whether the ALJ built an accurate and logical bridge between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020). The ALJ did so here,

and Plaintiff's motion to reverse or remand the case for further consideration of the Step 3 analysis is denied.

### 3. RFC Determination

Plaintiff finally argues that the ALJ committed reversible error in assessing her RFC. A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Anna-Marie L. v. Kijakazi*, No. 21 C 50354, 2022 WL 4610120, at *2 (N.D. Ill. Sept. 30, 2022) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)). "Both the RFC assessment and the hypothetical question posed to the [VE] must include all of a claimant's limitations supported by the medical record." *Joshua J. H. v. Kijakazi*, No. 21 C 837, 2022 WL 2905673, at *2 (N.D. Ill. July 22, 2022) (quoting *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021)).

In determining Plaintiff's mental and physical RFC, the ALJ thoroughly discussed the testimonial and medical evidence of record, and once again relied on the uncontradicted opinions from the state agency consultants.[7] (R. 21-26). On May 7, 2019, Dr. Kim found that Plaintiff has the physical ability to: occasionally lift and carry 10 pounds; frequently lift and carry less than 10 pounds; stand and walk for about 2 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; occasionally climb ramps, stairs,

---

[7] Plaintiff sets forth the general legal proposition that an ALJ must consider a claimant's statements about the intensity, persistence, and limiting effects of her symptoms, and states in conclusory fashion that the ALJ failed to do so here. (Doc. 13, at 16; Doc. 20, at 2, 4). To the extent Plaintiff intended this as a challenge to the ALJ's credibility determination, the argument is wholly undeveloped and therefore waived. *Krell*, 931 F.3d at 586 n.1.

ladders, ropes, and scaffolds; occasionally balance; and frequently stoop, kneel, crouch, crawl. (R. 128-29). Dr. Gotanco affirmed this assessment on December 13, 2019. (R. 145-48). The ALJ adopted many of these restrictions, finding them supported by Plaintiff's osteoarthritis of the knees and right foot, Achilles tendon impairment, degenerative disc disease of the neck and back, and obesity. (R. 25). But the ALJ determined that Plaintiff has even greater postural limitations due to her morbid obesity and evidence of an antalgic gait and difficulty walking on heels and toes on occasion. Specifically, the ALJ restricted Plaintiff to: no climbing of ladders, ropes, or scaffolds, and only occasional stooping, kneeling, crouching, and crawling. (*Id.*).

As for Plaintiff's mental functioning, Dr. Eckert opined on May 14, 2019 that Plaintiff is moderately limited in the ability to carry out detailed instructions, and moderately limited in the ability to interact appropriately with the general public. (R. 130-31). Dr. Eckert stated that Plaintiff can understand, recall and perform "simple and some detailed but not complex tasks, and make related judgments." (R. 131). She cannot perform tasks involving in-depth multilayer decision-making or supervisory tasks, but she can focus for 2-hour periods with routine breaks, and persist and maintain pace for 8-hour workdays and 40-hour workweeks despite psychological symptoms. Plaintiff can interact with co-workers and supervisors to learn tasks and accept criticism but cannot tolerate frequent public interactions. Finally, Plaintiff can adapt to a work setting and some changes in the work setting. (*Id.*). Dr. Hoy-Watkins affirmed this assessment on November 27, 2019. (R. 148-49). The ALJ largely adopted these restrictions but limited Plaintiff to only simple and routine tasks with no fast-paced production requirements. (R. 26). The ALJ also did not include a restriction to no regular public interaction, explaining that Plaintiff has

engaged in only brief therapy visits and there is no documentation of any interpersonal difficulties. (*Id.*).

As was the case with respect to the Listings, Plaintiff does not discuss the state agency opinions or argue that the ALJ erred in relying on them in determining her RFC. She merely sets forth a list of additional restrictions she believes the ALJ improperly omitted from the RFC based on testimony from the VE. These include: (1) laying down and resting/napping during the day; (2) being off-task for 15% or more of the workday; (3) being absent more than one and a half days per month; and (4) needing to elevate her legs in a reclining position. (Doc. 13, at 15) (citing R. 83-84). This argument fails because Plaintiff cites no evidence indicating that she actually has the stated functional limitations and no physician of record endorsed them. *See, e.g., Kinnari A. v. Saul*, No. 19 C 760, 2020 WL 1863291, at *7 (N.D. Ill. Apr. 14, 2020) (ALJ did not err in failing to recognize the plaintiff's claimed need to lie down where "no physician opined that [the plaintiff] had to lie down during the day."); *Kristine H. v. Kijakazi*, No. 20 C 4718, 2022 WL 910584, at *7 (N.D. Ill. Mar. 29, 2022) (failure to include naps in the RFC was not reversible error where "no physician opined that [the plaintiff] required almost daily naps."); *Anthony L. v. Kijakazi*, No. 20 C 5184, 2022 WL 2237141, at *4 (N.D. Ill. June 22, 2022) (an ALJ "does not need to accept leg elevation as a postural limitation when the only evidence in the record is Plaintiff's testimony."); *Wright v. Colvin*, No. 13 C 6429, 2014 WL 4197852, at *9 (N.D. Ill. Aug. 25, 2014) (affirming where "there is no evidence in the record of a physician or other expert stating that Wright would be off-task.").

Plaintiff next argues that the RFC should have included her need for a walker, her inability to handle objects with the left hand, her generalized weakness, and her problems

13

with concentration and memory. (Doc. 13, at 15). The ALJ acknowledged that Plaintiff appeared at appointments using a walker, but also noted that she walked normally on March 18, 2019, March 24, 2019, April 9, 2019, April 24, 2019, August 21, 2019, August 28, 2019, and December 10, 2019, and had full strength in her lower extremities on November 27, 2019. (R. 22, 603, 793, 902, 904, 949, 1499, 1856, 1909). Plaintiff does not address these records or explain how they support her claimed need for ambulatory assistance. The ALJ also discussed Plaintiff's reports of pain in the left arm but noted that she had full strength in the upper extremities and no neurological deficits on March 25, 2019, March 28, 2019, October 9, 2019, and December 10, 2019. (R. 21, 22, 1486, 1838, 1908, 2411). Again, Plaintiff ignores these records, and it is not the Court's role to reweigh the evidence or substitute its judgment for the ALJ's. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

As for Plaintiff's complaints of weakness, the ALJ discussed her testimony that leg weakness limits her ability to walk, and that she needs help getting in and out of bed, dressing, and grooming. (R. 21, 24). Weighing against this testimony, however, was evidence that during neurology and pain management exams on October 10 and November 27, 2019, Plaintiff put forth "[s]ubmaximal" and "[p]oor" efforts but still had full strength of 5/5. (R. 21, 24, 1840, 1865). The ALJ similarly acknowledged Plaintiff's complaints of poor memory and concentration and found her moderately limited in that area of functioning due to depression and chronic pain. (R. 19). At the same time, the ALJ accepted the opinions from Drs. Eckert and Hoy-Watkins that despite these problems Plaintiff can perform simple and routine tasks on a sustained basis. (R. 25-26, 131, 149).

14

Plaintiff does not identify any physician of record who recommended that the RFC include additional restrictions such as use of a walker, manipulative limitations, or accommodations for general weakness and difficulties with memory and concentration. The ALJ's decision is thus supported by substantial evidence. *Hosea M. v. Saul*, No. 18 C 2926, 2019 WL 5682835, at *7 (N.D. Ill. Nov. 1, 2019) (quoting *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018)) ("[C]ourts within this Circuit have repeatedly held that '[t]here is no error' in the formulation of an RFC 'when there is no doctor's opinion contained in the record [that] indicates greater limitations than those found by the ALJ.'"). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence is not a high hurdle to clear – it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

Plaintiff finally objects that the ALJ failed to consider all of her severe impairments, including in particular her obesity, in combination with her non-severe headaches and varicose veins. (Doc. 13, at 12; Doc. 20, at 1-3). Looking first to varicose veins, Plaintiff had excisions in her right leg on September 23, 2016, but as the ALJ pointed out, she required no further treatment for that condition. (R. 16, 653, 791, 919). In fact, a December 10, 2019 treatment note characterized the varicose vein issue as "resolved." (R. 1904). The mere fact that doctors continued to "monitor" the condition in no way demonstrates that it imposed additional functional restrictions that should have been included in the RFC. (Doc. 13, at 12). *See Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) ("[Plaintiff] having been diagnosed with these impairments does not mean they imposed particular restrictions on her ability to work. . . . It was [Plaintiff]'s

15

burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work.").

With respect to Plaintiff's headaches, the ALJ discussed evidence that Plaintiff reported having weekly migraines that can last up to three days, but this was if she did not take medication (Imitrex and topiramate). (R. 16, 647, 674, 913). The ALJ also cited: (1) a January 23, 2019, treatment note from Plaintiff's neurologist indicating that the headaches were likely a combination of tension-type headaches and medication over-use headaches; and (2) a December 10, 2019 treatment note stating that Plaintiff's headaches responded well to medication. (R. 16, 644, 1905). In other words, the ALJ did not reject an entire line of evidence as Plaintiff suggests. (Doc. 13, at 12). *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (an ALJ "need not provide a complete written evaluation of every piece of testimony and evidence.").

Plaintiff points to some additional records the ALJ did not mention, including: an October 21, 2015 After Visit Summary from Dr. Maietta stating that Plaintiff was prescribed naproxen for headache (R. 534); a February 13, 2019 treatment note reporting that Plaintiff complained of morning headaches (R. 625); hospital records from March 24 to 26, 2019 reflecting an admission due to fever, chills, and headache (R. 1430); a March 29, 2019 note from Plaintiff's neurologist increasing her topiramate dosage (R. 2436); and a February 4, 2020 treatment note diagnosing Plaintiff with migraine without aura and without status migrainosus, not intractable.[8] (R. 2016). First and foremost, Plaintiff fails to articulate how any of these records support specific functional limitations not included

---

[8] Plaintiff appears to fault the ALJ for failing to ask her about these specific records during the hearing. (Doc. 13, at 12). But the ALJ did inquire about Plaintiff's headaches generally (R. 59-60), and "because [Plaintiff] was represented by counsel at the hearing, she is presumed to have made her best case before the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017).

16

in the RFC. Moreover, when the state agency consultants offered their RFC opinions in May and December 2019, they had access to all of the records except for the February 2020 note stating Plaintiff's migraines were not intractable. The ALJ expressly recognized her obligation to consider Plaintiff's impairments in combination (R. 17, 22), and reasonably accepted that the uncontradicted opinions from Drs. Kim, Eckert, Gotanco, and Hoy-Watkins adequately accounted for all of Plaintiff's limitations, including any stemming from her headaches. *See Buckhanon ex rel. J.H.*, 368 F. App'x at 679.

Plaintiff is correct that the ALJ's discussion of her headaches was not perfect. For example, the ALJ incorrectly stated that Plaintiff never saw a neurologist for that condition though she clearly did. (R. 16). Since the ALJ also cited to specific neurology treatment notes when discussing Plaintiff's headaches, however, this error was harmless. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) ("We have repeatedly emphasized that 'the harmless error standard applies to judicial review of administrative decisions.'")). The ALJ also found it significant that Plaintiff never received Botox injections for her headaches even though no physician recommended such treatment. (R. 16). Regardless, the ALJ provided valid reasons for finding that Plaintiff's headaches cause no more than minimal limitations on her ability to perform work-related activities (R. 16, 17), and the Court will not nitpick the decision "in quest of a perfect opinion." *Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022). *See also Brenda L. v. Saul*, 392 F. Supp. 3d 858, 861 (N.D. Ill. 2019) ("The ALJ's decision may not be perfect, but it need not be.").

As for Plaintiff's obesity, the ALJ repeatedly referenced morbid obesity throughout the decision and included greater postural limitations than those found by the state

17

agency consultants as a result of that severe impairment. (R. 16, 17, 22, 25). Plaintiff "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ." *Lynida W. v. Saul*, No. 19 C 2021, 2020 WL 2542156, at \*4 (N.D. Ill. May 19, 2020) (quoting *Shumaker v Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015)). The mere fact that the "combined effects of obesity with other impairments *may* be greater than might be expected without obesity" (Doc. 13, at 12) (quoting SSR 02-1p, 2002 WL 34686281, at \*6) (emphasis added), is not evidence that Plaintiff in particular requires greater accommodations or that the RFC in this case is deficient.

Viewing the record as a whole, the ALJ built a logical bridge between the evidence and her conclusion that Plaintiff is capable of performing a reduced range of sedentary work. The ALJ addressed the evidence of record and reasonably relied on the uncontradicted opinions from the state agency consultants. Plaintiff may believe that she has greater functional restrictions, but as the Seventh Circuit has explained, the Court "cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). "Rather, it is the role of the ALJ to resolve conflicts in the evidence and to formulate an appropriate RFC based on consideration of the entire record." *McReynolds v. Berryhill*, 341 F. Supp. 3d 869, 880 (N.D. Ill. 2018). The ALJ did so here. Plaintiff's request to remand the case for further consideration of her RFC is denied.

## **CONCLUSION**

For reasons stated above, Plaintiff's Motion for Summary Judgment [13] is denied, and Defendant's Motion for Summary Judgment [18] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: June 9, 2023

_____
SHEILA FINNEGAN
United States Magistrate Judge